## WALLACE v. MANDEL BROS., Inc.
### No. 43 C 906.

District Court, N. D. Illinois, E. D.
June 25, 1946.

Chritton, Wiles, Davies, Schroeder & Merriam, of Chicago, Ill., for plaintiff.

Taylor, Miller, Busch & Boyden and Sheridan, Davis & Cargill, all of Chicago, Ill., for defendant.

HOLLY, District Judge.

Plaintiff charges defendant with infringing Patent No. 2,234,387 to Wallace and Hand for a toilet preparation to be used to retard perspiration and prevent unpleasant body odor resulting from perspiration. Hand has assigned his interest in the patent to Wallace.

Solutions to be used for this purpose had long been on the market. Those solutions usually contained an acid salt of a heavy metal as aluminum chloride or aluminum sulfate. The solutions were effective for the purpose intended but after application a residue of sulfuric acid remained which sometimes irritated the skin and rotted clothing fabrics which came in contact with it. This effect could be partly avoided by permitting the solution to dry and there-

after wiping it off with a damp cloth. This took time and on occasions was inconvenient for the user. The corrosive effect could be overcome by the addition of alkaline substances but such a compound would not stop the flow of perspiration and would be valueless for the purpose intended. The problem to be solved, as Wallace and Hand saw it, was to find a substance which added to the solution (or cream) would inhibit the corrosive effect when applied but would not interfere with its anti-perspirant quality. They had found such a substance they said in water soluble amino compounds possessing one or more intact reactive amino (UH 2) groups. The substance actually used was urea and the article manufactured by plaintiff under the patent is a cream containing aluminum sulfate, the astringent, and urea, the corrosive inhibiting agent.

Defendant's product is a cream containing urea, aluminum sulfic carbolate, aluminum sulfate, aluminum chloride and magnesium oxide. The plaintiff says this combination infringes its patent. If the patent is valid it does. The sole question here, then, is the validity of the patent.

So far as the record shows Wallace and Hand were the first persons to use urea as an agent for inhibiting the corrosive action of astringents in anti-prespirant preparations. Defendant contends, however, that it had been used as an inhibitor in other compounds and that its use as an inhibitor of the corrosive effect of acids was not new.

As evidence of the state of the art at the time Wallace and Hand applied for their patent defendant cites Patent No. 514,838 to Robert Schüpphaus, Patent No. 2,069,-711 to Edmund C. Missbach and No. 2,174,-534 to Joseph Harrell Shipp. The patent to Schüpphaus was for a method of preventing the decomposition of nitro-compounds, such compounds being subject to decomposition when stored for a long period of time due to traces of acid or impurities of an unstable nature remaining in the compounds, such as starch, cellulose or the like, in commercial manufacturing. To overcome this tendency alkalies had been used but they had the effect of dissolving the product. Schüpphaus therefore suggested the use of urea as a neutralizer

which he had found effective. Plaintiff contends that here, as the inventor says, urea is used as a neutralizer, while in his preparation the acid is not neutralized and should not be, otherwise the preparation would be ineffective as an anti-perspirant. The acidity must be retained for the astringent effect otherwise the flow of perspiration will not be lessened. What is desired is the retention of acidity but with something that will inhibit the corrosive action on skin or clothes.

One of the objects of the Missbach patent was to provide an effective corrosion inhibitor to prevent damage to fabric in halogenated hydro-carbon compounds such as tetra-chloride used in cleaning clothes and for that purpose he suggests the use (among other things) of urea. The inhibiting effect, he says, is accomplished as a result, first of neutralizing or removing any acid or acidic substances present; second, by retarding the production of acid, and third, by forming a protective film on the surface of metal. I do not see anything in this patent that teaches that urea will inhibit the corrosive effect while leaving the solution sufficiently acid to be astringent.

The Shipp patent is different. It relates to the treatment of textiles, particularly cotton fabrics with concentrated sulfuric acid. This acid is useful in producing parchmentized effects and organdy finishes on cotton fabrics. But if cotton fabric is immersed in 96% sulfuric acid at room temperature, removed immediately and rinsed very quickly with a large volume of water the fabric is disintegrated and destroyed. Shipp had discovered that if as much as 25 parts by weight of urea were added to 100 parts of acid then a fabric might be treated with this solution up to 60 seconds without being appreciably tendered. This, it seems to me, is quite like the effect produced by adding urea to a cream or solution containing aluminum chloride or aluminum which is to be applied to the skin or come in contact with fabric. The urea was not used in the Shipp patent to neutralize the acid for it was necessary to get the effect of the acid in producing the desired finish. The urea was used not as a neutralizer but for the purpose of in-

hibiting the corrosive action. If the addition of urea to a 96% solution of sulfuric acid will retard the corrosive or degrading effect upon cotton fabric it might well be thought it would inhibit the corrosive effect on skin or fabric of the acid residue left on the skin after using the ordinary preparations containing aluminum sulfate or chloride. I think Shipp anticipated Wallace and Hand in the discovery of the peculiar effect of urea when combined with an acid.

I must hold the patent invalid.