## FORSTNER CHAIN CORPORATION v. MARVEL JEWELRY MFG. CO.

### Civil Action No. 795.

United States District Court
D. Rhode Island.
Feb. 1, 1949.

Nathaniel Frucht, of Providence, R. I., for plaintiff.

James J. Corrigan, of Providence, R. I. (Raymond J. Mawhinney, of Washington, D. C., on the brief), for defendant.

HARTIGAN, District Judge.

This is a suit brought by the Forstner Chain Corporation, a New Jersey corporation, against the Marvel Jewelry Mfg. Company, a Rhode Island corporation, for infringement of United States Letters Patent No. 2,401,297.

The defendant has filed an answer denying infringement and validity.

"The plaintiff states that it charges defendant's Exhibit 1 -Linking Bracelet (Old) as an infringement of plaintiff's patent in suit.

"The plaintiff designates Claim 1 of plaintiff's patent in suit as charged infringed by defendant's Exhibit 1." (See plaintiff's reply to defendant's motion for further particulars)

Patent 2,401,297 was granted June 4, 1946, to William Forstner, assignor to the plaintiff, for "wrist watch strap."

Claim 1 is as follows:

"A clasp for an extension bracelet having a lower part with an end loop and an upper part extending through the end loop and overlying the lower part, the lower part, having separate links and connector links hingedly connecting the separate links and spaced to provide openings between the connector links, said clasp having a base plate with a terminal hook at one end extending downwardly for hooking over a selected connector link, said base plate having an opening therethrough, and a cover plate hingedly connected to the other end of the base plate and having a terminal hook extending downwardly, the length of the cover plate being slightly greater than the length of the base plate to permit snapping engagement of its hook over the base plate hook, said cover plate having a downwardly extending detent adapted to extend through the base plate opening and spaced from the cover plate hook to seat behind the selected connector link."

The file history of plaintiff's patent in suit shows originally nine claims. Ex. D. On pages 8 and 9 it states:

"Claims 1 to 5 are rejected as being drawn to the old combination of an extension bracelet and a clasp therefor, as shown by the patent to Johnson. See In re Cook 552 O.G. 560; 1943 C.D. 346. The combination, being shown to be well known, the invention would appear to reside in one or the other of the elements and should be so claimed.

* * * * * *

"Claims 1 to 4 are further rejected as failing to point out any patentable distinction over the disclosure in the patent to Johnson when taken with the Swiss patent and the French patent. The Swiss patent shows a clasp means which may be substituted for the clasp means in the Johnson device. It is admitted that the cover plate does not have a hook element to engage the hook member on the base plate; however, this structure, being shown to be old in the French patent, may be substituted in the clasp shown in the Swiss patent without involving invention."

Paper No. 5, Amendment B, February 7, 1946 (pages 12 and 13), states:

"The claims as now drawn define a clasp for an extension bracelet of the type having a lower part and an overlying upper part, the clasp being provided with a base plate having a terminal hook for engaging a selected link of the bracelet, and a cover plate which is hingedly connected to the base plate and has a terminal hook which is adapted to snap over the base plate hook, the base plate having an opening and the cover plate having a detent which extends downwardly through the opening so that the selected connector link is retained between the base plate hook and the cover plate detent. * * *"

William Kastner, Assistant Treasurer of the plaintiff in charge of its production and who has been with the plaintiff since 1923 and who has had experience in the manufacture of watch attachments, testified that he was familiar with the construction shown in Patent 2,401,297 and identified Exhibit 4 as one of the bracelet chains manfactured by the plaintiff under the patent.

He identified Exhibit 5 as an enlarged drawing of Fig. 4 in the patent, showing the clasp portion and part of the bracelet corresponding to the plaintiff's bracelet, Exhibit 4. Concerning Exhibit 4 he testified: "There is a base plate which has a terminal hook. The base plate also has an opening. The terminal hook is engaged over one of the connecting links on the structure of the body of the bracelet. Then a top plate, which has also a terminal hook and also a —and has a detent, is closed over the base plate. The result is that the terminal hook of the top plate engages over the terminal hook of the base plate and locks it. The detent projects through the opening of the— The detent of the top plate projects through the opening of the base plate and engages the link of the chain body at the other side."

The plaintiff offered in evidence Exhibit 6, a watch band made by the defendant which is identical with Exhibit 1 in the pleadings.

Kastner testified:

"20 Q —and tell me how the bracelet of Exhibit 6 operates? A This clasp has a bottom plate with a terminal hook. It also has a top plate with a hook and it has a detent which projects through a hole of the bottom plate.

"21 Q Do you mind telling where that detent is? Is it on the top plate? A It is on the top plate."

He also testified that the clasp on Exhibit 6 operates the same as the clasp on Exhibit 4.

In cross-examination he testified that the functional construction of top plates of Exhibits 4 and 6 were the same.

He admitted that the top plates of Exhibit 4 and Exhibit 6 are structurally different in that the top plate of Exhibit 6 is narrower than the top plate of Exhibit 4. He testified that the bottom and top plates of Exhibit 4 were separate pieces riveted together and that the construction of Exhibit 6 is composed also of two pieces hinged together with a bar between the two plates which holds them together and permitting motion.

The plaintiff admits that the bracelet structure is not part of the invention but

contends that Claim 1 is in the clasp and that the infringing construction is identical with the construction of the plaintiff's clasp for the same type of bracelet.

Clarence F. Fontaine, a foreman and jewelry toolmaker for the defendant, testified that he has been engaged in the trade approximately twenty-eight years. He testified relative to United States and foreign patents as follows:

Patent 488,088 granted December 13, 1892, to J. C. Pettibone for "garment-supporter":

"13 Q Before you go any further. We have got a base plate, top and bottom, and a terminal hook. Is that right? A That is. Terminal hook—when that is in its closed position, the terminal hook on the top plate engages itself over the bend or terminal hook on the base plate. In Figure 3, No. 2, that particular bend is of a similar form of the detent on the top plate on the patent in question.

"14 Q In other words, that has got a detent too? A A detent too, only this case is bent and in a closed position goes through the opening in the base plate of Figure 9."

Patent 783,039 granted February 21, 1905, to Frederick Hirsh for "clasp":

"17 Q In other words, that is a clasping device? A Clasping device. In Figure 5 shows this particular patent in an open position, having a base plate, Figure 1, with a bent, a 'U' bent, irregular 'U' bent rather, which would be considered more or less a hook, terminal hook. Figure 2 is showing a top plate. Figure 5 is showing a terminal hook of the top plate. Figure 4 shows the detents, in this case being on the outer side, outer edge of the top plate. Figure 6 shows this particular clasp in closed position, functioning the same by snapping the terminal hook from the top plate over the terminal hook in the base plate, with the detents running either side of the base plate, thus engaging material or anything else that would be necessary to be put into this particular type of clasp.

"18 Q You have got a front plate. No. 2, on that, haven't you,—the Hirsh patent? A Yes, we have, sir.

"19 Q Is there any hinging connection there? A There is. They have a hinge pin running through the loops of the base plate and through the loop of the top or cover plate.

"20 Q So that in that particular patent you have got a cover plate hingedly connected to the other end of the base plate. Is that right? A Right.

"21 Q It has a terminal hook too, has it? A It has a terminal hook, which is No. 5, on the top plate."

Patent 1,362,512 granted December 14, 1920, to A. W. L. Schermuly for "coupling device":

"24 Q Will you go ahead then and explain? That has got a base plate too? A That has a base plate with a hook running underneath in a downward form.

"25 Q You mean that is a terminal hook? A Would be called a terminal hook.

"26 Q Extending downward? A Extending downward from the base plate.

"27 Q Is there any hinge connection there? A In through that. There is a hinge in there engaging No. A—the letter 'A'. When it is pulled over in a closed position, has a detent, 'a5' in Figure 2."

Although the Schermuly patent is designed for a coupling device, it has all of the material and substantial parts and elements of the claim in suit and operates in a similar mode.

Patent 1,784,635, granted December 9, 1930, to J. Kreisler for "jewelry":

"47 Q Go ahead and explain it, please. A Explained in Figure 4, showing the clasp in an open position. No. 30 of Figure 4 shows a base plate hingedly connected with No. 5—35, pardon me. No. 30 having a terminal hook marked No. 31. No. 35 having a terminal hook marked 37, which, when in a closed position, snaps over the base plate, 30."

Patent 1,831,451 granted November 10, 1931, to Sylvester A. Johnson for "extensible bracelet":

"49 Q Will you go ahead and explain what that is, please? A In the Johnson patent, 'Extensible Bracelet', it shows in Figure 6 a looped piece of metal to form a tongue or a detent which, in closed position, would lock two sections of this particular bracelet.

"50 Q In other words, this is a bracelet clasp, too? A That is a bracelet clasp. The function of it is of a bracelet clasp."

Patent 1,836,955 granted December 15, 1931, to Edwin G. Carlson for "flexible bracelet":

"53 Q What have you got there, Mr. Fontaine? A In Figure No. 9 shows a hook which would be a top plate hingedly connected to a base plate, No. 20. On the top plate, No. 22, has a terminal hook which is marked No. 24 which, in the closed position, locks two sections of a bracelet or link in Figure 8. That would be Nos. 22, 23, 24, 25."

Patent 1,892,350 granted December 27, 1932, to Charles H. Kestenman for "clasping device for bracelets":

"58 Q Will you describe the clasp, please? A In Figure No. 8 shows the clasp in an open position having a base plate with a terminal hook and a top plate, which is No. 30, with a terminal hook No. 32 and 33. That, when in a closed position, No. 40, 46, and 44 engages the opening or locking the opening. No. 44 would be a detent and stopping anything from—the engaged link from dropping out and snapping into position.

"59 Q In other words, that works that detent so that it won't slip or— A To close the opening or terminal hook."

Swiss Patent No. 76,834 to Ateliers D'Art Kabe for "device for fastening the link of a bracelet to the attaching lugs of a watch, compass and the like" published July 1, 1918:

"78 Q I will hand you Defendant's Exhibit F. We call your attention to Swiss Patent 76,834 to Ateliers D'Art Kabe. Will you tell us what that patent has? A This particular patent, as shown in Figure 2, has a base plate 'f' with a terminal hook, Figure 'a'. Also attached is a top plate hingedly connected to base plate 'b'. That is a hinge pin. It also has in Figure 'c' a detent that, when in a closed position, snaps

through the perforation in the base plate locking the terminal hook, 'a'.

"79 Q In this patent in suit, Mr. Fontaine, we have the base plate and we have the top plate. We have the terminal hook and we have the detent going down into the bracelet or other object—downwardly and fastening it. Have we the same elements there in this particular patent as that? A We have."

I find that there is no invention in combining the old form of hook and detent couple as shown in the Swiss Patent 76,834 or the United States Schermuly Patent 1,362,512 with such spring catches as shown at 3 in the United States Patent to Pettibone 488,088 or at 5 in Figures 5 and 6 of United States Hirsh Patent 783,039.

I find that Claim 1 for the construction of the Forstner Clasp is not the result of invention as distinguished from mere mechanical skill possessed by one skilled in the art to which it pertains.

In Abbott Machine Co. v. Universal Winding Co., 1 Cir., 137 F.2d 166, 167, the Court said:

"It has long been recognized by the Supreme Court that some combinations of old mechanical elements or parts are patentable while others are not. Hailes v. Van Wormer, 20 Wall. 353, 368, 22 L.Ed. 241. Those which are patentable have been called 'true' or 'patentable' combinations; those which are not, as we have indicated above, have been called 'aggregations', usually preceded by some belittling adjective. Obviously terminology cannot decide cases, and the test to determine whether or not any given combination or aggregation—the terms are really synonymous—was stated in the case just cited as follows: 'It must be conceded that a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made. But the results must be a product of the combination, and not a mere aggregate of several results each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect without the production of something novel, is not invention. No one by bringing together several old devices without producing a new and useful result the joint product of the elements of the combination and something more than an aggregate of old results, can acquire a right to prevent others from using the same devices, either singly or in other combinations, or, even if a new and useful result is obtained, can prevent others from using some of the devices, omitting others, in combination.' "

See also Mabey v. Howard & Lewis Motor Sales, 1 Cir., 132 F.2d 40, and Bellavance v. Frank Morrow Co., 1 Cir., 140 F.2d 419, rehearing denied 1 Cir., 141 F.2d 378, cert. denied 322 U.S. 742, 64 S.Ct. 1144, 88 L.Ed. 1575, rehearing denied 322 U.S. 772, 64 S.Ct. 1283, 88 L.Ed. 1596.

 The plaintiff argues that its clasp is for jewelry and is a different art. This argument does not impress me in view of what the Supreme Court said in Jungersen v. Ostby & Barton Co., 69 S.Ct. 269, 272:

" * * * Thus Jungersen employed in his claimed invention well known skills and practices in a manner and for a purpose long familiar in the field of casting. His claimed improvement is therefore not patentable.

"The patentee contends, however, that jewelry casting is a separate and distinct art; that consequently the advancements in other types of casting mentioned above cannot be viewed as the prior art in reference to this patent. The answer to this is twofold. In the first place, this patent is not restricted to the casting of jewelry. Its stated object is to 'facilitate the casting of small metal articles, particularly articles of intricate detail such as jewelry. * * *' Secondly we think that the improvements in the art of casting which were disclosed by the patents and publications discussed above were so obviously applicable to the type of casting sought to be effected by Jungersen that he was bound by knowledge of them. Mandel Bros. v. Wallace, 335 U.S. 291, 295-296, 69 S.Ct. 73."

In the instant case it can be said with equal force that Forstner employed in his claimed invention well known skills and practices in a manner and for a purpose long familiar in the field of clasps.

 It is my opinion that Claim 1 is invalid.

Judgment may be entered for the defendant for costs.