## NEW WRINKLE, Inc. et al. v. WATSON, Commissioner of Patents.

### No. 11475.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 16, 1953.

Decided March 19, 1953.

Petition for Rehearing Denied
April 7, 1953.

Section 2(e) (3) of the 1946 Act, n. 1, supra. And, as we have seen, the telephone book or city directory test is eliminated.

Mr. H. A. Toulmin, Jr., Dayton, Ohio, with whom Mr. F. E. Drummond, Washington, D. C., was on the brief, for appellants. Mr. Herbert H. Brown, Dayton, Ohio, also entered an appearance for appellants.

Mr. J. Schimmel, Atty., U. S. Patent Office, with whom Mr. E. L. Reynolds, Sol., U. S. Patent Office, was on the brief, for appellee.

Before PROCTOR, BAZELON and FAHY, Circuit Judges.

FAHY, Circuit Judge.

In proceedings in the District Court pursuant to Rev.Stat. § 4915,[1] appellants sought judgment entitling them to letters patent on the basis of claims set forth in application Serial No. 653,932, relating to the art of producing a coating composition which creates a wrinkle finish when applied to a surface and dried. The court after a hearing filed a memorandum opinion and entered judgment dismissing the complaint. This accorded with the decision in the Patent Office. We think the judgment must be affirmed.

The claims define a dry mixture consisting of an oil reactant, either maleic acid, maleic acid anhydride, or fumaric acid, and, in addition, a texture producer, such as manganese borate, cobalt acetate, or the lead oxides. This texture producer is referred to as a drier. The two chemical components of the mixture are ground together into a powder. No chemical change by reason of the admixture, however, is advanced in the claims. A composition is made of this powder and a non-wrinkling oil or varnish base. The method

of arriving at the composition is to add the powder mixture to a non-conjugated oil heated to a temperature of from 350° F. to 420° F., heating this composition to a temperature of from 570° F. to 620° F., allowing it to cool and then adding a thinner and drier.

Each component part of the powder mixture first above described was known to the prior art of obtaining a wrinkle finish composition. Patents of Waldie, No. 2,392,346, and of Root, Nos. 1,883,408 and 1,950,417. Mixing them together is not invention; nothing is discovered by that alone. We do not understand that there is any serious controversy about this. As the court said of a comparable situation in In re Trattner, 1929, 58 App.D.C. 355, 30 F.2d 879, "The record does not show that the combinations set out by appellant result in any new chemical composition, and it is fair to assume that they are mere aggregations" and not patentable.

As to the composition of this powder mixture with a non-wrinkling oil or varnish, Waldie himself, one of the appellants, testified that his patent previously granted disclosed just such a composition of a non-wrinkling oil to which is added maleic acid anhydride and a drier, which produces a wrinkle finish when applied as a coating and dried. And the Root patents disclose the same driers defined in the claims now being considered, that is, cobalt acetate, manganese borate and lead oxides.

The method of reaching the finished product differs from that previously specifically disclosed only in that each of the two parts of the powder mixture (one, the oil reactant, two, the texture producer) had previously been added separately to the heated non-wrinkling oil, whereas in the instant claims they are added simultaneously, having already been mixed together. The result now is as it was before, a wrinkle finish when the product is applied to a surface appropriate for its use. There was testimony, as Judge Curran in the court below pointed out, "that as a result of add-

---

1. Rev.Stat. § 4915 (1875), as amended, 35 U.S.C. § 63 (1946), has been repealed by Section 5, Act of July 19, 1952, c. 950, 66 Stat. 815, 35 U.S.C.A. preceding § 1. It has been replaced by 66 Stat. 803, 35 U.S.C.A. §§ 145, 146.

ing the oil reactant and the texture modifier as a unit, he [Waldie] produced a harder finish and a firmer wrinkle". But, as the court continued, there was no showing that the product "is substantially different from that produced under the prior art. Where the result accomplished is substantially the same, steps taken concurrently or simultaneously are the equivalent of and not patentable over steps taken successively."

What has been said presents we think a fair if brief analysis of the case. We find no basis for disagreeing with the conclusion reached by the court below and by the Patent Office. The coming into effect pending this appeal of new Title 35, U.S.C., revising and codifying the provisions of the United States Code on Patents, does not help appellants.[2] Under Section 103 of the new Act, "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art", a patent may not be obtained. The Report of the Committee on the Judiciary of the House of Representatives, of May 12, 1952, accompanying H.R. 7794, which became the Act, says of this section,

" * * * An invention which has been made, and which is new in the sense that the same thing has not been

made before, may still not be patentable if the difference between the new thing and what was known before is not considered sufficiently great to warrant a patent. * * *" (H.R.Rep.No. 1923, 82d Cong., 2d Sess. 7 (1952))[3]

In his Commentary on the statute Charles J. Zinn, Law Revision Counsel of the Committee on the Judiciary of the House, says:

"Section 103 is a restatement of the rule invalidating patents for lack of invention or lack of patentable novelty which has long been recognized by the courts and other authorities but has not before been spelled out in the statute." (1952 U.S.Code Cong. & Adm.News, pp. 2507, 2513.)

Plainly any difference whatever from the prior art is not in and of itself sufficient to make out patentable invention under the new statute. We need not determine now just what is its effect; for whether the required difference results from "creative talent", or is described as "sufficiently great to warrant a patent", or, in language found in the present statute, is such that the "subject matter as a whole" would not have been "obvious * * * to a person having ordinary skill in the art", we think it clear that the slight difference over known developments which might be attributable to these claims is devoid of patentability.[4]

Affirmed.

2. The statute took effect January 1, 1953, Section 4(a), Act of July 19, 1952, c. 950, 66 Stat. 815, 35 U.S.C.A. preceding § 1, and provides that "[i]t shall apply to further proceedings on applications pending on such date". The Solicitor of the Patent Office, with whom we agree, takes the position, on the basis of Tomlinson of High Point v. Coe, 1941, 74 App.D.C. 364, 123 F.2d 65, and Barron-Gray Packing Co. v. Kingsland, 1948, 84 U.S.App. D.C. 28, 171 F.2d 576, certiorari denied 1949, 336 U.S. 944, 69 S.Ct. 810, 93 L.Ed. 1100, that the Act applies to this case. There is no suggestion by appellants that a remand is desired or required to en-

able the District Court to consider the case under the standards of the new statute. In any event we would not find that necessary. The facts so clearly lead to the conclusion we reach that we would not be justified in withholding present disposition.

3. See, also, New Wrinkle, Inc. v. Watson, 1953, App.D.C., — F.2d —, particularly n. 6.

4. This being so, the last sentence of new Section 103, which reads "Patentability shall not be negatived by the manner in which the invention was made" is not material to this case.