## NEW WRINKLE, Inc. et al. v. WATSON, Commissioner of Patents.

### No. 11403.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 16, 1953.

Decided March 19, 1953.

Writ of Certiorari Denied Oct. 12, 1953.

See 74 S.Ct. 35.

Mr. H. A. Toulmin, Jr., Dayton, Ohio, with whom Mr. F. E. Drummond, Washington, D. C., was on the brief, for appellants. Mr. Herbert H. Brown, Dayton, Ohio, also entered an appearance for appellants.

Mr. S. W. Cochran, Atty., U. S. Patent Office, Washington, D. C., with whom Mr. E. L. Reynolds, Sol., U. S. Patent Office, Washington, D. C., was on the brief, for appellee.

Before PROCTOR, BAZELON and FAHY, Circuit Judges.

BAZELON, Circuit Judge.

The District Court dismissed this § 4915 suit for issuance of a patent upon a determination that the claims did not disclose invention.[1] The claims relate to a process

---

1. Patent Application No. 653,933.
   Rev.Stat. § 4915 (1875), as amended, 35 U.S.C. § 63 (1946), has been repealed by the Act of July 19, 1952, c. 950, § 5, 66 Stat. 815, 35 U.S.C.A. preceding § 1.

for the manufacture of a varnish which, when applied to surfaces and dried, produces a wrinkled finish exhibiting a pattern of non-uniform worm-like separated wrinkles. Briefly described, the process involves the heating of tung oil, a powerful wrinkling agent, *together with* linseed oil, to control the critical thickening process of the tung oil; this oil composition is then mixed with a *prepared* (cooked) short oil varnish.[2]

These matters were all revealed in the prior art except that (1) it did not specify whether the two oils should be heated together or *separately;* and (2) it specified as preferred procedure that the oil composition be mixed with *unprepared* (uncooked) short oil varnish.[3] Nothing in these slight variations in procedure is sufficient to give rise to invention.[4] Our conclusion would be the same under any plausible view of the criteria for invention laid down by the new Patent Act which became effective while this appeal was pending.[5] For it is clear to us that even if it be said that there are "differences between the subject matter sought to be patented and the prior art," they "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art * * *."[6] And this is true notwithstanding the fact that the resulting wrinkle pattern differs somewhat from patterns known to the prior art. The difference is too slight to constitute novelty in the patentable sense. In any event, it was achieved by doing what would have been obvious to one of even ordinary skill seeking variations in wrinkle patterns.

Affirmed.

It has been replaced by 66 Stat. 803, 35 U.S.C.A. §§ 145, 146.

2. Record, p. 111, Finding of Fact No. 2.

3. Id. at 112–13, Findings of Fact Nos. 3–9.

4. Sherwin-Williams Co. v. Marzall, 1951, 88 U.S.App.D.C. 374, 190 F.2d 606; and see Mandel Bros. v. Wallace 1948, 335 U.S. 291, 295, 69 S.Ct. 73, 93 L.Ed. 12; Funk Bros. Seed Co. v. Kalo Inoculant Co., 1948, 333 U.S. 127, 68 S.Ct. 440, 92 L.Ed. 588; Sinclair & Carroll Co. v. Interchemical Corp., 1945, 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644.

5. 66 Stat. 798, 35 U.S.C.A. § 103: "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

6. *Id.* Because non-invention is so clear in the present case under any construction of the new Act, we find it unnecessary to define its scope. We merely note in passing that whatever doubts exist about the need for a "flash of genius" in achieving invention, there can be none about the need of such a flash in reconciling appellants' colorable view that the new Act has relaxed case law criteria for invention with the contrary view that takes its hue from the following exchanges on the floor of the Senate:

"Mr. Wiley. * * * The bill provides for a codification of the patent laws, and the House of Representatives has worked on this subject for 3 or 4 years. The bill simply constitutes a restatement of the patent laws of the United States." 98 Cong.Rec. 9226, 82d Cong., 2d Sess. (July 3, 1952).

"Mr. Saltonstall. Mr. President, will the Senator from Nevada tell us the purpose of the bill?

"Mr. McCarran. The bill would codify the patent laws of the United States. It is under the able guidance of the Senator from Wisconsin [Mr. Wiley].

"Mr. Saltonstall. I am not a patent lawyer, but I know patents are a very technical subject. Does the bill change the law in any way or only codify the present patent laws?

"Mr. McCarran. It codifies the present patent laws. * * *" 98 Cong.Rec. 9534, 82d Cong., 2d Sess. (July 4, 1952).

See New Wrinkle, Inc. v. Watson, 92 U.S.App.D.C. ——, 204 F.2d 35, note 2, and the reference in that opinion to H. R.Rep.No.1923, 82d Cong., 2d Sess. 7 (1952); and Thys Co. v. Oeste, 21 U.S.L. Week 2447 (March 17, 1953).