**Samuel C. CUNNINGHAM**

v.

**BOOKBINDER'S SEA FOOD HOUSE, Inc.**

Civ. A. No. 13059.

United States District Court
E. D. Pennsylvania.

Aug. 8, 1957.

Denny & Denny, Philadelphia, Pa., for plaintiff.

J. Warren Kinney, Jr., Cincinnati, Ohio, Howson & Howson, Philadelphia, Pa., for defendant.

KIRKPATRICK, Chief Judge.

This is a suit for infringement of U. S. Patent No. 2,324,137, to Cunningham, the plaintiff, for a food container. The alleged infringing structure is an imitation crab shell used for cooking and serving deviled crabs.

Deviled crabs are made by filling a shell with crab meat combined with bread crumbs and seasoning, placing the shell so filled in deep, hot fat for three to five minutes and cooking it at high temperature. Natural shells were generally used until 1941 when the practice was forbidden by law in Pennsylvania, because found to be unsanitary. Although some efforts had already been made along that line, the new law made it especially desirable to have a synthetic crab shell available which would have the characteristics of a natural shell and which would retain its appearance after being cooked.

The plaintiff, who was employed in his father's sea food restaurant, had been experimenting for a number of years with various kinds of papers, later combining them with sizings. Some time prior to 1938, he had evolved a fairly satisfactory shell made from two sheets of paper impregnated with a paste of his own composition, consisting of a mixture of flour, starch, fuller's earth, gum arabic and alum, but had taken no steps to patent it. Then, in 1935 or 1936 he picked up a piece of stereotypers' matrix board and, as was his habit when he encountered a new type of paper, he cooked it in deep fat to determine whether it would be a suitable material for his crab shell. He found it to be very satisfactory. Some time later he determined to apply for a patent and consulted a patent lawyer. The lawyer consulted reference books having to do with stereotypers' matrix board. He drew the specifications for the patent basing them on this research as well as the information he received from the plaintiff. The book or books which he consulted and upon which he based his specifications did not describe the matrix board which the plaintiff had experimented with and which was known as "dry mat", but described "wet mat" board—a type which was more nearly akin to the two-sheet composition which the plaintiff had tried earlier. The claims, however, are sufficiently broad to cover a crab shell made from the dry mat board as well as the wet mat described in the specifications and, in any event, I would regard the use of dry mat matrix board as equivalent to the use of the wet mat described in the specifications.[1]

The foregoing somewhat abbreviated statement of the facts is all that is needed in order to come to the important issue in the case, namely, the presence or absence of invention.

Illustrative of the general nature of the claims in issue is Claim 2 which reads as follows: "Means for cooking in deep fat and serving a food, comprising the product of the dehydration of a paper material permeated with a liquid ingredient, a carbohydrate ingredient, a refractory ingredient and a germicide." From the evidence in this case, it is plain that the "means" described (and the substance of the claim) is simply a shell made of stereotypers' matrix board. Such matrix board, both dry and wet, had been known in the art for years. Its characteristics were that it could be embossed, that it could stand temperatures up to 600° F. without deleterious effects and that it was nontoxic. These characteristics were all well known. It was not known, however, whether it could be fried in fat and come out looking like a real crab shell, neither misshapen, limp nor greasy. The plaintiff, so far as the evidence appears, was the first to try this treatment upon it.

[1]. The books consulted by the plaintiff's attorney were rather old ones and apparently made no reference to dry mat matrix board. Wet mat board had substantially fallen into disuse after it was found that a satisfactory so-called dry mat board could be manufactured commercially, thus eliminating the necessity and inconvenience attendant upon each stereotyper making up his own wet mats.

He found that it would maintain its shape and hardness after being fried and, in addition, would acquire a somewhat translucent and shell-like appearance.

What the plaintiff did was to conceive the idea that matrix board might be adapted to making artificial shells for deviled crab and to find out by a simple experiment that it was. As such, the discovery is not patentable, not because the mental process of the discoverer falls short of the standard of invention as that term applies to new machines, manufactures or composition of matter, but because the statute does not permit the patenting of an idea. Judge L. Hand's opinion in Old Town Ribbon & Carbon Co. v. Columbia Ribbon & Carbon Mfg. Co., 2 Cir., 159 F.2d 379, is directly apposite and the principle there discussed is dispositive of this case.

However, if it could be assumed that the statute permitted the patenting of a product of this kind, the patent would be invalid for lack of invention. If the plaintiff had been a person ordinarily skilled in the art, he would have known of the existence of stereotypers' matrix board and would have known that it could be embossed, thus making it suitable for the manufacture of synthetic crab shells, and that it was nontoxic in character, thus making it suitable for use as a container for a food product, and that it could withstand temperatures up to 600° F., thus making it suitable for his use so far as temperature was concerned, since his highest temperature for cooking was 375° F. At most, he would not have known the effect that immersion in hot fat would have upon it. Slightly paraphrased, the language used in Mandel Bros. v. Wallace, 335 U.S. 291, 69 S.Ct. 73, 75, 93 L.Ed. 12, is directly applicable to the present case: "But we think that the state of the prior art was plainly sufficient to demonstrate to \* \* (anyone having ordinary skill) \* \* \* searching for \* \* \* (a paper that could be immersed in hot fat without injury) \* \* \* that he should make the simple experiment that was made here."

Claims 1 and 12 of the patent refer to papier-mache and the balance of the claims refer to sheets of paper, paper material, cellulose derivative and cellulose ingredient. The matrix board is essentially a combination of paper with ingredients which will render it hard, heat resistant and embossable. It is apparent that nothing is added to the invention by listing the various forms which the paper ingredient in matrix board may take. As to the papier-mache, the form in which the paper is added to these ingredients has nothing to do with the result achieved or desired but merely goes to convenience of manufacture or use. They are all fully equivalent to each other and, having found that one form was suitable for deep frying, it is obvious that all other forms would be.[2]

In view of what has been said before in this opinion, little discussion is required on the question of infringement. Dry mat matrix board is made by interfelting layers of paper webbing and treating them with ingredients fully encompassed in the plaintiff's claims. The defendant does not avoid infringement by using dry mat matrix board in place of the wet mat board described in the specifications. The claims clearly read as well on dry mat board as on wet mat, and, if they did not, the doctrine of equivalency would protect the plaintiff in this infringement.

Judgment for the defendant, each side to pay its own counsel fees.

2. The patentee evidently agreed with this conclusion for having discovered that his two-sheet composition and dry mat matrix board were satisfactory but claimed all of these alternatives without further test.