**GRIFFITH RUBBER MILLS, a corporation, Appellant,**

v.

**Henry S. HOFFAR, Appellee.**

**No. 17544.**

United States Court of Appeals
Ninth Circuit.

Feb. 4, 1963.

Rehearing Denied March 6, 1963.

Phillips, Coughlin, Buell & Phillips, Alfred H. Stoloff and Jarvis B. Black, Portland, Or., for appellant.

Robert W. Beach, Seattle, Wash., Cleveland C. Cory and Frederick H. Torp, Portland, Or., for appellee.

1

Before POPE, BARNES and BROWNING, Circuit Judges.

BROWNING, Circuit Judge.

Henry S. Hoffar sued Griffith Rubber Mills for the infringement of two patents (Nos. 2,859,830 and 2,877,860) relating to a muffler made of an elastomer.[1] Defendant counterclaimed for a declaratory judgment of invalidity of the patents. Both were found to be valid and infringed;[2] Griffith appealed. Among the errors asserted was the failure of the District Court to grant Griffith's motion for judgment notwithstanding the verdict on the ground that in view of the state of the art at the time of the issuance of the patents the mufflers which they described were not within the statutory definition of patentable invention. We have concluded that "the circumstances indicate that the jury * * * departed from the relevant legal criteria" for determining invention, and that Griffith's assignment of error is therefore well taken.[3] In arriving at this conclusion, and in the discussion which follows, we have resolved in Hoffar's favor any possible dispute as to those questions which this Court has earlier held to be questions of fact: the nature of the prior art and what Hoffar did to improve it.[4]

Hoffar was a builder of boats. He recognized the desirability of making a muffler that would not be subject to the corrosive effects of exhaust gases, gasoline, sea water, and weather. He testified that the matter was brought vividly to his attention when he discovered that the metal mufflers on his own boat were so badly corroded that they had to be replaced. Turning his attention to the problem, he developed the device disclosed in his first patent. Hoffar's "invention" consisted essentially of a muffler made of an elastomer, having a slitted internal baffle set across the flow of the gas. The Hoffar muffler was built of neoprene, "a synthetic rubber * * * characterized by superior resistance to oils, gasoline, sunlight, ozone, and heat and by lower permeability to gasses than rubber."[5] Hoffar's second patent covered an improvement consisting of a cone-shaped or cup-shaped baffle with multiple slits.

The specifications of the patents disclose that Hoffar's muffler is resistant to deterioration by oil and acid, and is relatively small and light in weight; that it cannot be dented or readily damaged, or adversely affected by heat or freezing; and that it reduces exhaust noise with a minimum of back pressure. The silencing effect results from expansion of the walls of the body of the muffler and vibration of the slits in the baffle in rhythm with the pulsations of the exhaust gas, as well as from the tendency of the elastomer to absorb sound.[6]

We are satisfied that "the differences between the subject matter * * patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject

---

1. Defined in Webster's Third New International Dictionary (1961) as "an elastic rubberlike substance (as a synthetic rubber or a plastic having some of the physical properties of natural rubber)."

2. The District Court sat with a jury as to one patent and an advisory jury as to the other.

3. Himes v. Chadwick, 199 F.2d 100, 102 (9th Cir., 1952). See also Berkeley Pump Co. v. Jacuzzi Bros., Inc., 214 F.2d 785, 791–792 (9th Cir., 1954), and cases cited.

4. See Rohr Aircraft Corp. v. Rubber Teck, Inc., 266 F.2d 613, 618 (9th Cir., 1959),
and cases cited, particularly Judge Pope's concurring opinion in Bergman v. Aluminum Lock Shingle Corp. of America, 251 F.2d 801, 809–813 (9th Cir., 1958).

5. Webster's Third New International Dictionary (1961).

6. The use of a cone-shaped or cup-shaped baffle disclosed in the second Hoffar patent provides more surface for slits. In addition, the cone is pointed in the direction of the flow of exhaust gas so that the pulsating gas, as it emerges from the slits of the baffle, is directed against the resilient walls of the muffler with a further dampening effect.

matter pertains," and that the patents are therefore invalid by statutory mandate.[7] 35 U.S.C.A. § 103.

■ The purposes of the limitation on patentability expressed in the statute,[8] though often stated, are worth repeating. Patents are issued not for private benefit but for the public good; they grant a monopoly for a limited period as an incentive to the disclosure of innovations which in the end will add to the fund of freely available knowledge.[9] However, the public is entitled to benefit, without granting special concessions, from such advances as normally flow from the application of the ordinary skills of one in the trade to the existing fund of public knowledge.[10] Thus the statute prescribes, as a condition of patentability, that what has been accomplished must be such that it would not have been obvious to a hypothetical person skilled in all that could have been known, at the pertinent time, in the field to which the invention relates.

■ It follows that though a device may be new and useful it is not patentable if it consists of no more than a combination of ideas which are drawn from the existing fund of public knowledge, and which produces results that would be expected by one skilled in the art.[11] A public grant of the private power to exclude others from making, using, and selling such a device simply "withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men."[12] No balancing public benefit results from such a patent since the fund of freely available public knowledge is reduced during the period of monopoly, and is only restored rather than enhanced when that period ends.

■■ The rule is the same where the "invention" consists solely or in part of the substitution of one known substance for another theretofore used for the purpose.[13] Selection from among available materials of one material thought more

7. We assume for our purpose that Hoffar's muffler was "new and useful" (35 U.S.C. A. § 101) in the sense that no prior patent had been issued for an elastomer muffler with a slitted baffle and no prior publication had described such an article, and that it had utility.

8. At least so far as the general principles stated here are concerned, 35 U.S.C.A. § 103 codified existing law. Compare Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 347 n. 2, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961) (Mr. Justice Black concurring), with Reiner v. I. Leon Co., 285 F.2d 501 (2d Cir., 1960).

9. Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 330–331, 65 S.Ct. 1143, 89 L.Ed. 1644 (1945).

10. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152–153, 71 S.Ct. 127, 95 L.Ed. 162 (1950). "The patent law was not intended as a dam to divert natural changes and evolutionary progress in the arts into the laterals of monopoly. The general skill and judgment of the crafts belong to society as a whole * * *." Evr-Klean Seat Pad Co. v. Firestone Tire & Rubber Co., 118 F.2d 600, 602 (8th Cir., 1941). "[A] patent should not be granted for discovery of a result that would flow

naturally from the teachings of the prior art." Aetna Steel Products Corp. v. Southwest Products Co., 282 F.2d 323, 334 (9th Cir., 1960).

11. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162 (1950). Representative cases from this Circuit are collected in Aetna Steel Products Corp. v. Southwest Products Co., 282 F.2d 323 (9th Cir., 1960). See also Kaakinen v. Peelers Co., 301 F.2d 170 (9th Cir., 1962); Pursche v. Atlas Scraper & Eng. Co., 300 F.2d 467 (9th Cir., 1961).

12. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152–153, 71 S.Ct. 127, 130 (1950). What such a patent "withdraws," of course, is the old elements in the new combination; use of the old elements separately or in a different combination would not infringe. Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 339–340, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961).

13. Smith v. Goodyear Dental Vulcanite Co., 93 U.S. 486, 496–497, 23 L.Ed. 952 (1877); Dewey & Almy Chemical Co. v. Mimex Co., 124 F.2d 986, 987 (2d Cir., 1942).

suitable for a particular use is normally within the competence of the person of ordinary skill in the art, and, generally, is for that reason not patentable.[14] Nothing is added to the sum of public knowledge when a known material is used to perform functions or produce results which could be reasonably foreseen from the material's known characteristics. As in the case of other combinations of ideas drawn from existing knowledge, the old elements, including the known material in the new use, must perform additional and different functions in the combination than out of it; the results must be unusual and surprising—more must be derived from the combination than that which might be reasonably expected as the sum of the old ideas drawn from the public domain.[15]

An enlarged tube or body having internal baffles is a form well known to the muffler art. Hoffar testified that he was not the first to employ a slitted damper wall or one shaped as a cone or cup. Harley, No. 1,922,848, August 15, 1933, disclosed baffles which were both cone-shaped and slitted. Allan, No. 1,468,895, September 25, 1923, and Huntoon, No. 2,280,953, April 28, 1942, also disclosed a cone-shaped baffle. Slits or slots in a baffle were used in Hutton, No. 1,162,064, November 30, 1915, and in Schmidt, No. 1,274,943, August 6, 1918. Slack and Turner, British Patent No. 684,987, December 31, 1952, disclosed the use of flexible metal "strips" (the equivalent of "slits," but described in terms of the intervening material rather than in terms of the openings through it), and taught that a muffling effect resulted from the yielding of these strips to vibrating exhaust gases.

It was stipulated that Hoffar "did not invent neoprene" and that this material "has been known since prior to 1945." Hoffar testified that it was commonly known that neoprene resisted corrosion, was light in weight in comparison with metals commonly used for mufflers, and had the effect of dampening sound. It was stipulated that "as early as 1937, exhaust hose made of rubber or elastomer material was used on marine engines, i. e., to absorb vibration and deaden metallic hammering, while at the same time to conduct exhaust gases and cooling water from the engine to the outside." There was evidence of use on boats of elastomer hose on both sides of metal mufflers and at the end of metal exhaust lines, to lessen noise. A manufacturer of elastomer hose for marine engine exhaust installations advertised that such hose "absorbs vibration and deadens metallic hammering of explosions—more or less a muffler in itself."

The Jeffords Patent, No. 2,764,250, September 25, 1956, disclosed a lining in a metal muffler of sound-absorbing material "such as rubber"; the Newell Patent, No. 1,927,947, September 26, 1933, disclosed a muffler body made of wood with a series of internal rubber baffles having small circular perforations, the openings in one baffle being offset from those in the next. Newell's muffler relied in part upon the flexing of these perforated rubber baffles to dampen the noise of the intermittent intake of air by a fluid compressor. The dampening effect of rubber and other resilient materials upon

14. Walker, Patents § 29 (Deller ed. 1937, Supp. 1961). The Supreme Court announced the general rule as early as 1850. Hotchkiss v. Greenwood, 11 How. 248, 52 U.S. 248, 13 L.Ed. 683. We have frequently applied it. See, e. g., Bergman v. Aluminum Lock Shingle Corp. of America, 251 F.2d 801, 806 (9th Cir., 1957); Heath v. Frankel, 153 F.2d 369 (9th Cir., 1946); United States Appliance Corp. v. Beauty Shop Supply Co., 121 F.2d 149, 150 (9th Cir., 1941). But see Oliver-Sherwood Co. v. Patterson-Ballagh Corp., 95 F.2d 70 (9th Cir., 1938).

15. See, e. g., Florsheim v. Schilling, 137 U.S. 64, 11 S.Ct. 20, 34 L.Ed. 574 (1890); Haloro, Inc. v. Owens-Corning Fiberglas Corp., 109 U.S.App.D.C. 364, 288 F.2d 148 (1961); Bergman v. Aluminum Lock Shingle Corp. of America, 251 F.2d 801 (9th Cir., 1957); Heath v. Frankel, 153 F.2d 369 (9th Cir., 1946); Evr-Klean Seat Pad Co. v. Firestone Tire & Rubber Co., 118 F.2d 600, 602 (8th Cir., 1941); Goldman v. Polan, 93 F.2d 797 (4th Cir., 1938). See also Mandel Bros. v. Wallace, 335 U.S. 291, 69 S.Ct. 73, 93 L.Ed. 12 (1948).

pulsating gas or liquid had also been disclosed in Morrison, No. 2,152,205, March 28, 1939, which claimed "an exhaust muffler for fluid pressure operated machines, comprising a casing of resilient material," resulting in "pulsations of reduced intensity \* \* \* with consequent reduction in noise"; and in Beach, No. 2,-261,948, November 11, 1941, which disclosed a device for muffling "pulsating noises" in lines through which liquid was pumped, utilizing a tube "preferably of a comparatively elastic rubber material or of a like substance, resilient to the liquid passing through the passageway, which elastic material yields more or less as pulsation or pressure fluctuations occur and in a measure to suit the force of the pulsation."[16]

Hoffar argues that although slitted cone-shaped baffles may have been used to muffle exhaust gas, and elastomer material may have been used in muffler bodies and baffles to absorb sound, there was no prior use of a combination of a muffler body and slitted baffle made of elastomer to dampen noise resulting from the *pulsation* of exhaust gas. But if a mechanic skilled in making mufflers had before him no more of the prior art than the disclo-

sure that when pulsating liquid or gas passed through a rubber-walled muffler the resilience of the walls dampened the noise from the pulsations (Morrison and Beach), and that the same effect was produced when pulsating gas passed through a muffler with internal baffles made of rubber and having small circular holes (Newell), or through a baffle composed of vibrating flexible metal strips or slits (Slack and Turner), we think it would not rise to the level of invention for him to combine a rubber wall and slitted rubber baffle to dampen gas pulsations.

Although no single one of the elements of the total prior knowledge embraced the whole of Hoffar's muffler, we think the difference between their sum and Hoffar's combination of them was unsubstantial and that his advance must be held to have been an obvious one to a person skilled in this art.

■ There was no objective evidence that the combination was less obvious than it appears. There was no showing that Hoffar's muffler dealt with a problem which had concerned the industry over a substantial period and which others had sought to solve without success.[17] So far as was shown, Hoffar was the first to

---

16. These uses were in related though different fields; Hoffar's first patent itself specified application to a field broad enough to include "the air intake of a compressor or gas turbine." And in any event it must be assumed that one skilled in the art who sought to solve the problem dealt with by Hoffar's combination would extend his search for useful ideas into reasonably related areas where similar problems had been faced. See Jungersen v. Ostby & Barton Co., 335 U.S. 560, 567, 69 S.Ct. 269, 93 L.Ed. 235 (1949); Mandel Bros. v. Wallace, 335 U.S. 291, 296, 69 S.Ct. 73, 93 L.Ed. 12 (1948); William T. Alvarado Sales Co. v. Rubaloff, 263 F.2d 926, 928 (9th Cir., 1959); Borkland v. Pedersen, 244 F.2d 501, 503 (7th Cir., 1957).

17. Hoffar offered evidence only of sales of his muffler. Proof of the existence of the pattern described in the text has been available in most cases in which substitution of material has been found patentable. Perma-Fit Shoulder Pad Co. v. Best Made Shoulder Pad Corp., 218 F.2d

747, 751 (2d Cir., 1955), and cases cited. See Smith v. Goodyear Dental Vulcanite Co., 93 U.S. 486, 495–496, 23 L.Ed. 952 (1877); National Latex Products Co. v. Sun Rubber Co., 274 F.2d 224, 239–240 (6th Cir., 1960); Samson-United Corp. v. Sears, Roebuck & Co., 103 F.2d 312 (2d Cir., 1939); United Shoe Machinery Corp. v. E. H. Ferree Co., 64 F.2d 101 (2d Cir., 1933); Yablick v. Protecto Safety Appliance Corp., 21 F.2d 885 (3d Cir., 1927); Low v. McMaster, 266 F. 518 (3d Cir., 1920). Compare Haloro, Inc. v. Owens-Corning Fiberglas Corp., 109 U.S. App.D.C. 364, 288 F.2d 148 (D.C.Cir. 1961). Of course, long-felt need and commercial success are only relevant evidence of lack of obviousness, and are not a substitute for invention where on the whole record invention is clearly lacking. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 153, 71 S.Ct. 127, 95 L.Ed. 162 (1950); Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 330, 65 S.Ct. 647, 89 L.Ed. 973 (1945).

**6**

make an all-elastomer muffler with a slit-baffle wall only because he was the first skilled in the art who directed his attention to the probem of creating an effective muffler that would not corrode.[18]

The judgment is reversed.

---

18. See Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 328–330, 65 S.Ct. 647, 89 L.Ed. 973 (1945). See also B. F. Goodrich Co. v. United States Rubber Co., 244 F.2d 468, 469 (4th Cir., 1957); Goldman v. Polan, 93 F.2d 797 (4th Cir., 1938).