**ZERO MANUFACTURING COMPANY, Inc., Appellant,**

v.

**MISSISSIPPI MILK PRODUCERS AS-SOCIATION, Appellee.**

No. 21624.

United States Court of Appeals
Fifth Circuit.

March 22, 1966.

Rehearing Denied May 2, 1966.

Penrose Lucas Albright, Washington, D. C., James Leon Young, Jackson, Miss., Robert F. Davis, Washington, D. C., for appellant.

Edmund C. Rogers, John T. Rogers, St. Louis, Mo., W. E. McIntyre, Jr., Brandon, Miss., Kingsland, Rogers, Ezell, Eilers & Robbins, St. Louis, Mo., for appellee.

Before WISDOM and COLEMAN, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge:

This action was brought by Zero Manufacturing Company, Inc., under 35 U.S.C. §§ 271, 281 alleging the infringement of two patents [1] by Mississippi Milk Producers Association, a Mississippi cooperative which sold and installed milking equipment, manufactured in large part by the Paul Mueller Company, who undertook its defense.

The District Court found both patents to be invalid under 35 U.S.C. § 103, as anticipated by the prior art, thus making it unnecessary to reach the infringement issue, and dismissed Zero's complaint. We affirm.

The facts may be quickly capsulated. After three rejections, G. R. Duncan was issued a patent relating to a vacuum container milking system and apparatus therefor on May 20, 1954, which was reissued with additional claims June 5, 1956. The second patent relates to an elliptical opening in a cylindrical milk tank, which, after one rejection, was issued February 17, 1959. Both patents have been assigned to Zero, who, since 1953, has been successful in the manufacture and sale of the bulk milk vacuum tank unit.

Prior to introduction of the refinements here in issue, the dairy industry was familiar with various milking procedures. The vacuum milking machine, or pipe line milker, with its teat cup assembly attachable to the cow's udder, was in wide usage. Milk was drained into a pail, often slung around the cow's middle, from which it was poured into the familiar five gallon milk can. These cans were convenient both for cooling and transporting milk. However, it often was more convenient, both for the farmer and the trucker, to utilize a larger container; thus the industry saw wide use of the bulk milk tank and the tank truck. Doing away with the milk cans was as welcome as the availability of milking machines. Moreover, the less exposure of milk to unsanitary conditions present in the atmosphere, such as dust and insects, during its movement from cows to processing plant, the better. Proper sanitation also requires that the whole system, particularly the tank, be easily accessible for cleaning by the farmer.

The system here in issue achieved high sanitary conditions in the milking, cooling and storing process performed by the farmer prior to transportation, in that the system was hermetically sealed. It included the teat cup assembly, hoses or lines through which the milk flowed under vacuum, and a milk tank in which milk was cooled, agitated to keep it from separating, and stored. When the tank was empty, the large elliptical opening in it facilitated cleaning and inspection.

The subject matter of the reissue patent comprises two parts, the milking system and a refrigerating means. The former includes a cylindrical vessel with domed ends into which the milk lines and a vacuum line are inserted. When a compressor creates a vacuum inside the vessel, milk is drawn through the lines into the tank. The refrigerating system in-

---

[1.] The patents in suit are: United States Letters Patent Reissue No. 24,162 issued June 5, 1956, to G. R. Duncan, and United States Letters Patent No. 2,873,-722, issued February 17, 1959, to L. L. Duncan et al.

cludes a compressor-condensor which circulates a refrigerant through coils around the tank, to cool the milk therein. The subject matter of the '722 patent relates merely to the oval-shaped opening on the top of the cylindrical vessel which facilitates cleaning and inspection of the interior. Appellant refers to this opening as a "swoop down" opening whose asserted patentable quality is the fact that its sides are lower than its ends, which allows a milk inspector to view the entire interior of the tank from outside.

The basic statutory provisions under which this controversy has arisen are found in Title 35 of the United States Code. Sections 101 and 102 prescribe the requirements of *novelty* and *usefulness* in subject matter capable of being patented and section 103 provides, in effect, that a patent may not be obtained when the subject matter claimed would be *obvious* to a person having ordinary skill in the particular art involved. A concurrence of these three explicit conditions is necessary for patentability. Graham v. John Deere Co., 86 S.Ct. 684 (February 21, 1966).

A wealth of jurisprudence exists in this area of patent law. Since Hotchkiss v. Greenwood, 11 How. 248, 52 U.S. 248, 13 L.Ed. 683 (1850), it has been recognized that if an improvement is to obtain the privileged position of a patent, more ingenuity must be involved than the mere work of a mechanic skilled in the art. See Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58 (1941).

It is axiomatic that a patent should not be granted for the discovery of a result that would flow naturally from teachings of the prior art. To do nothing more than combine the teachings available in a manner which would have been obvious to one skilled in the art, even though the device has unexpected advantages, does not create a patentably new invention. For example, in the case of In re Crockett, 279 F.2d 274 (Cust. & Pat. App. 1960), it was held that where the idea of combining ingredients would flow logically from the teachings of the prior art, a claim to their joint use is not patentable.

On the other hand, even though all the constituents in a new assemblage may be old, if their new concourse would not have been obvious at the time the invention was made to a person having ordinary skill in the art, there is patentability. Reiner v. I. Leon Co., 285 F.2d 501 (2 Cir. 1960), cert. den. 366 U.S. 929, 81 S.Ct. 1649, 6 L.Ed.2d 388 ("clamps" used to maintain "formed curls" in a woman's hair). Similarly, in Oliver United Filters, Inc. v. Silver, 206 F.2d 658 (10 Cir. 1953), a combination of known elements was held patentable as having produced such a new and improved result over anything existing in the prior art. There a process for extraction of sugar from a sugar beet solution was so novel and long-sought in the industry, that the combination device was found to constitute patentable invention.

The Supreme Court now has affirmed the principle that a combination of known elements may be patentable if it satisfies the requisite conditions. Thus in United States v. Adams, 86 S.Ct. 708 (February 21, 1966), the Court had before it a patent on a "nonrechargeable, as opposed to a storage, electrical battery," which consisted of two electrodes—one made of magnesium, the other of cuprous chloride—which are placed in a container of either plain or salt water as battery fluid. In upholding the validity of the Adams patent, the Court held:

"We conclude the Adams battery was also nonobvious. As we have seen, the operating characteristics of the Adams battery have been shown to have been unexpected and to have far surpassed then-existing wet batteries. Despite the fact that each of the elements of the Adams battery was well known in the prior art, to combine them together as did Adams required that a person reasonably skilled in the prior art must ignore that (1) batteries which continued to operate on an open circuit and which heated in normal use were

not practical; and (2) water-activated batteries were successful only when combined with electrolytes detrimental to the use of magnesium. These long-accepted factors, when taken together, would, we believe, deter any investigation into such a combination as is used by Adams. This is not to say that one who merely finds new uses for old inventions by shutting his eyes to their prior disadvantages thereby discovers a patentable innovation. We do say, however, that known disadvantages in old devices which would naturally discourage the search for new inventions may be taken into account in determining obviousness." 86 S.Ct. at 714.

Until recently, the leading case in this area was Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.,[2] where a three-sided rack on a supermarket checkout counter was held unpatentable as merely an aggregation of old elements. After a lapse of 15 years, the Supreme Court now has re-examined the statutory and judicial tests of patentability in Graham v. John Deere Co., supra, and announced what definitive tests of patentability are now required under the 1952 enactment of 35 U.S.C. § 103.

One of the three cases decided by the Supreme Court, consolidated for argument, was an infringement action which had presented a conflict between two Circuits over the validity of a single patent on a "Clamp for vibrating Shank Plows."[3] The subject matter was technical, and it suffices to say that it was acknowledged to be a combination of old mechanical elements whose asserted patentable quality was its improved functional result due to the novel relationship of the old mechanical members of the device. Upon elucidating the new test of "nonobviousness" under § 103, the Court found the combination there at issue to lack that condition of patentability. After a lengthy examination of the legislative history of section 103, the Court stated:

"Approached in this light, the § 103 additional condition, when followed realistically, will permit a more practical test of patentability. The emphasis on non-obviousness is one of inquiry, not quality and, as such, comports with the constitutional strictures. [U.S. Const. art. I, § 8, cl. 8.]

"While the ultimate question of patent validity is one of law, Great A. & P. Tea Co. v. Supermarket Equipment Corp., supra, 340 U.S. at 155 [71 S.Ct. 127], the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy. * * *", 86 S.Ct. 684, at 693.

---

2. 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950). "Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans." Id. at 152, 71 S.Ct. at 130. See also Aetna Steel Products Corp. v. Southwest Products Co., 282 F.2d 323 (9 Cir. 1960).

3. In Jeoffroy Mfg. Inc. v. Graham, 219 F.2d 511 (5 Cir. 1955), cert. denied, 350 U.S. 826, 76 S.Ct. 55, 100 L.Ed. 738, we held the patent valid under the rule that when a combination produces an "old result in a cheaper and otherwise more advantageous way," it is patentable. The Eighth Circuit had held, in the Graham case, that there was no new result in the patented combination, and that the patent was invalid. 333 F.2d 529, rev'g 216 F. Supp. 272 (W.D.Mo.1963). The Supreme Court found that neither circuit applied the correct test.

Certain "secondary considerations" were quite eloquently stated by Judge Learned Hand in *Reiner v. I. Leon Co.,* supra, 285 F.2d at 503, 504:

> "The test laid down is indeed misty enough. It directs us to surmise what was the range of ingenuity of a person 'having ordinary skill' in an 'art' with which we are totally unfamiliar; and we do not see how such a standard can be applied at all except by recourse to the earlier work in the art, and to the general history of the means available at the time. To judge on our own that this or that new assemblage of old factors was, or was not, 'obvious' is to substitute our ignorance for the acquaintance with the subject of those who were familiar with it. There are indeed some sign posts: e. g. how long did the need exist; how many tried to find the way; how long did the surrounding and accessory arts disclose the means; how immediately was the invention recognized as an answer by those who used the new variant? * * * "

■■ With these questions in mind, examination of the record reveals numerous factors which militate toward the conclusion that both the reissue patent and the '722 patent fail to indicate "nonobviousness" within the statutory meaning. These was no showing that the industry needs were urgently felt, cf. Oliver United Filters, Inc. v. Silver, supra, nor that others had long sought the claimed new development. Rather, it appears that the plaintiff's device found a great deal of opposition in the industry and it was only after several years of use that it has reached its present state of acclaim. Cf. Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 64 S.Ct. 593, 88

L.Ed. 721 (1944), where an improved protective casing for dry-cell flashlight batteries was so quickly and widely accepted that its creators could claim "invention." In the case here presented it appears that even recently plaintiff's device has come under attack for the asserted reason that warm milk from the cow reaching the refrigerated tank may have a pernicious effect upon flavor.

Neither are we convinced that the lower court's conclusion that the two patents were anticipated in the prior art was in error.[4] Briefly, Uphaus, No. 1,603,-429, shows a bulk milk receptacle upon which vacuum is maintained directly in order to draw the milk from the cow into the tank. No refrigeration means is shown. McDonald, No. 2,207,928, discloses a complete vacuum tank milking system, noted to be used with or without a cooler. Wachowitz, No. 2,266,134, shows a "direct expansion" type milk tank cooler, and with a slightly different configuration. McGovern, No. 2,617,264, shows an atmospheric bulk milk tank with refrigeration means.

With respect to the reissue patent it is difficult to state the conclusion more articulately than did the trial court:

> "After reviewing the prior art patents as revealed at the trial and in the briefs, the Court finds as a fact that one with the ordinary skill of the art could add a refrigerating means, as taught by Wachowitz or McGovern, to a vacuum bulk milk tank as taught by Uphaus or McDonald. Conversely, one with the ordinary skill of the art could add a vacuum milking system, as taught by Uphaus or McDonald, to a refrigerated atmospheric bulk milk tank as taught by Wachowitz and McGovern." 232 F.Supp. at 723.

4. In Fairchild v. Poe, 259 F.2d 329, 332 (5 Cir. 1958), we said: "The essence of patent anticipation cases lies in the fact that the *inventive thought* in both the anticipating and patented devices is the same, not merely that one process might possibly perform another function. * * * 'Where a patent includes a combination of elements, it is not necessary to establish anticipation that all of the elements be found in a single earlier patent or in a single device previously in general use. It is enough if the evidence, taken as a whole, discloses that all of the claimed elements are found in different prior patents in the art or in different devices previously in general use, *and no new functional relationship arises from their combination.*' "

Similarly, the court below found the '722 patent, involving the elliptical opening in the top of the vessel, invalid as anticipated in the prior art of Nitch, No. 1,437,857, even though that patent concerned a boiler rather than a milk tank. We find ample support in the record for the court's conclusion that:

"Testimony at the trial revealed and the Court finds as a fact that it is impossible to make a hole in a cylindrical tank without having the sides lower than the ends. The Court also finds as a fact that the swoop down opening for the purpose of inspection and to facilitate cleaning of the tank was taught by F. O. Nitch patent No. 1,437,857." 232 F.Supp. at 723.

Plaintiff's argument in brief that the unique configuration of the flanges which facilitate the sealing of the tank upon the "swoop down" opening does not convince us that the eminent trial judge committed reversible error in concluding that the subject matter of the '722 patent lacked the requisite nonobviousness.

When the facts of the case here presented are held up to the *Graham* test of "nonobviousness," it clearly appears that the scope and content of the prior art were such that whatever inventive thought the two patents may have evidenced, the subject matter showed no substantial differences from the prior art; and, moreover, with respect to the resulting combination device in the reissue patent, and the "swoop down" opening in the '722 patent, the skill level of neither rose higher than that achieved in the prior art. We are thus impelled to the conclusion that both patents are invalid, as the differences between them and the pertinent

prior art would have been obvious to a person reasonably skilled in that art.[5]

In seeking reversal of the court below, appellant argues in brief that "[t]he basic issue before the [district] court was whether defendant succeeded in rebutting the strong presumption of validity that arose in this case in view of the issuance and re-issuance of the patents involved. The finding by the lower Court that such presumption had been rebutted is based upon a misconception of law." Appellant's brief, p. 43.

The contention is two-pronged: First it is urged that the trial judge erred in finding the statutory presumption of validity[6] weakened or destroyed by the failure of the Patent Office to cite the pertinent prior art patents of Uphaus and McDonald for the reissue patent, and Nitch for the '722 patent; and second, that there exist numerous factors which, it is argued, strengthen the presumption of validity concerning the patents here in issue.

■■■ The basis for the first contention lies in application of the principle that where the Patent Office has not considered pertinent prior art, the statutory presumption of validity is seriously weakened. See e.g., Murray Co. of Texas, Inc. v. Continental Gin Co., 264 F.2d 65 (5 Cir. 1959).[7] Thus appellant argues that the prior art considered by the Patent Office in both the reissue and the '722 patents was at least as pertinent as the art which the trial judge alluded to in his conclusion that the presumption had been rebutted. But even if we agreed with appellant that the prior art considered by the Patent Office was more pertinent than the Uphaus, McDonald

---

5. See also the well documented decision in Griffith Rubber Mills v. Hoffar, 313 F.2d 1, 5 (9 Cir. 1963): "There was no objective evidence that the combination was less obvious than it appears. * * * So far as was shown, Hoffar was the first to make [the device] only because he was the first skilled in the art who directed his attention to the problem * * *."

6. 35 U.S.C. § 282: "A patent shall be presumed valid. The burden of establishing

invalidity of a patent shall rest on a party asserting it. * * *"

7. Cf. Artmoore Co. v. Dayless Mfg. Co., 208 F.2d 1, 4 (7 Cir. 1953): "It has been held, and we think with logic, that it is as reasonable to conclude that a prior art patent not cited was considered and cast aside because not pertinent, as to conclude that it was inadvertently overlooked."

and Nitch patents, still the presumption would not be conclusive. See Graham v. John Deere Co., 333 F.2d 529 (8 Cir. 1964), aff'd 86 S.Ct. 684 (1966). After a careful consideration of all authorities cited by appellant in support of his contention, we find nothing which convinces us of error in the conclusion of the trial court that the uncited prior art was the more pertinent.

Turning to appellant's second contention, the argument proceeds by analogy to a number of cases holding various factors to have the effect of strengthening the presumption of validity. Thus it is suggested that the utility of the invention along with the fact that the industry did not immediately accept the new device, showed that it involved more than mere mechanical skill and was not obvious.[8] Further, it argues that the imitation[9] and advertisement[10] by the alleged infringer have strengthened presumption. Lastly, appellant urges that commercial success and public acceptance of the device[11] evidence the unobviousness of the invention.

After careful consideration of each and all of these factors, in context, we are not persuaded that the presumption can become so strong as to resist equally strong rebuttal. Application of the facts contained in the record in the case here presented fail to show that the statutory presumption has not been rebutted by substantial evidence. Indeed, as was said in Griffith Rubber Mills v. Hoffar, 313 F.2d 1, 5 (1963), "[t]here was no objective evidence that the combination was less obvious than it appears."

What moves us, in the last analysis, is that appellant's device has added nothing to the sum of knowledge in the industry which is so new and useful as to entitle it to a monopoly upon that item. It consists of nothing more than a combination of ideas drawn from the existing fund of public knowledge. As was said in *Graham*, the claims in issue "must fall as not meeting the test of § 103, since the differences between then and the pertinent prior art would have been obvious to a person reasonably skilled in that art." 86 S.Ct. at 703. That appellant was the first skilled in the art who actually produced a refrigerated vacuum bulk milk tank apparatus does not amount to patentable invention under our law.

The decision of the district court is Affirmed.

---

8. See e. g., Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527 (1911); The Barbed Wire Patent, 143 U.S. 275, 12 S.Ct. 443, 36 L.Ed. 154 (1892); McKee v. Graton & Knight Co., 87 F.2d 262 (4 Cir. 1937).

9. See e. g., Florence-Mayo Nuway Co. v. Hardy, 168 F.2d 778 (4 Cir. 1948); Hazeltine Research, Inc. v. Admiral Corp., 87 F.Supp. 72 (N.D.Ill.1950).

10. See e. g., Motor Improvements v. General Motors Corp., 49 F.2d 543 (6 Cir. 1931), cert. denied, 284 U.S. 663, 52 S.Ct. 43, 76 L.Ed. 561.

11. See e. g., Harris v. National Machine Works, 171 F.2d 85 (10 Cir. 1948); Ray-O-Vac Co. v. Goodyear Tire & Rubber Co., 136 F.2d 159 (7 Cir. 1943), aff'd 321 U.S. 275, 64 S.Ct. 593, 88 L. Ed. 721.